## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## WICHITA FALLS DIVISION

| | | |
|---|---|---|
| **B.P. B/N/F JESSICA AND JAMESON PRUDEN** | § | |
| **PLAINTIFF,** | § | **C.A. NO. 7:24-cv-00060** |
| | § | |
| **v.** | § | |
| | § | |
| **BURKBURNETT INDEPENDENT SCHOOL DISTRICT,** | § | |
| **DEFENDANT.** | § | **JURY DEMAND** |

### RESPONSE TO BURKBURNETT INDEPENDENT SCHOOL DISTRICT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Respectfully submitted:

Mr. Martin J. Cirkiel, Esq.
Texas Bar No. 00783829
Federal ID No. 21488
marty@cirkielaw.com [Email]
Cirkiel Law Group, P.C.
1901 E. Palm Valley Blvd.
Round Rock, Texas 78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]

Mr. Hunter A. Nunn
Texas Bar No. 24083587
The Law Office of Hunter A. Nunn
P.O. Box 191385
Dallas, Texas 75219
(972) 863-9592 [Telephone]
(972) 767-0338 [Facsimile]
hunter@hnunnlaw.com [Email]
ATTORNEYS FOR PLAINTIFF

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii-iv

I. INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. STANDARD FOR A 12(b)(6) MOTION TO DISMISS  . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. FACTUAL RESUME . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV. ARGUMENT AND AUTHORITIES - THE CONSTITUTIONAL CLAIMS ARE PLAUSIBLE
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

V. ARGUMENT AND AUTHORITIES - <u>THE FAILURE TO ACCOMMODATE CLAIM BASED
UPON THE AMERICANS WITH DISABILITIES ACT AND THE REHABILITATION ACT S
PLAUSIBLE</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

VI. ARGUMENT AND AUTHORITIES - <u>THE FAILURE TO ACCOMMODATE CLAIM BASED
UPON THE AMERICANS WITH DISABILITIES ACT AND THE REHABILITATION ACT S
PLAUSIBLE</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION AND PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

**SUPREME COURT**

City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 450 (1985). . . . . . . . . . . . . . . . . . . . . . . 8

Davis v. Monroe County Board of Education 526 U.S. 629 (1999). . . . . . . . . . . . . . . . . . . 15-17

Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 291, 118 S. Ct. 1989, 141 L. Ed 2d 277 (1998)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Goss v. Lopez, 419 U.S. 565 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**COURTS OF APPEALS**

Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Brennan v. Stewart, 834 F.2d 1248, 1257 (5th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 18

C.C. v. Hurst-Euless-Bedford Indep. Sch. Dist., 641 Fed. Appx. 423, 426 . . . . . . . . . . . . . . . 13

City of Pasadena, 669 F.3d 225, 233 (5th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Delano-Pyle v. Victoria County, 302 F. 3rd 567, 574-7 (5th Cir. 2002). . . . . . . . . . . . . . . . . . . . 9

Doe v. Sch. Bd. of Broward Cty., 604 F.3d 1248, 1256 (11th Cir. 2010) . . . . . . . . . . . . . . . . 16

Great Plains Trust Co. v. Morgan Stanley Dean Witter Co., 313 F.3d 305, 329 (5th Cir. 2002) . .4

Harrison v. Klein Indep. Sch. Dist., 856 Fed. Appx. 480, 484 (5th Cir. 2021)  . . . . . . . . . . 13, 17

Kelley v. City of Wake Vill., 264 Fed. App'x 437, 443 (5th Cir. 2008). . . . . . . . . . . . . . . . . . . . 8

Leffall v. Dallas Independent School District, 28 F.3d 521, 530 (5th Cir. 1994). . . . . . . . . . . . 16

Lowrey v. Texas A&M University System, 117 F.3d 242, 247 (5th Cir. 1997). . . . . . . . . . . . . . 2

McNely v. Ocala Star-Banner Corp., 99 F.3d 1068, 1074 (11th Cir. 1996). . . . . . . . . . . . . . . 18

Martinez v. New Deal Indep. Sch. Dist., 802 Fed. Appx. 98, 100 (5th Cir. 2020) . . . . . . . . . . . 7

Moore v. Willis Independent School District, 233 F.3d 871 (5th Cir. 2000) . . . . . . . . . . . . . . . . 7

Murrell v. Sch. Dist. No. 1, Denver, Colo., 186 F.3d 1238, 1248-49 (10th Cir. 1999) . . . . . . . . . 15

Pushkin v. University of Colorado, 658 F.2d 1372, 1385 (10th Cir. 1981) . . . . . . . . . . . . . . . . 18

Rosa H. v. San  Elizaro Indep. Sch. Dist., 106 F.3d 648, 656 (5th Cir. 1997) . . . . . . . . . . . . . . . 8

Ruvalcaba v. Angleton Indep. Sch. Dist., 2022 U.S. App. LEXIS 3213; 2022 WL 340592 . . . . 7

Swindle v. Livingston Parish Sch. Bd., 655 F.3d 386 (5th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . 6

Whitley v. Hanna, 726 F.3d 631, 638 (5th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**DISTRICT COURTS**

Bryant v. Dayton Indep. Sch. Dist., 2021 U.S. Dist. LEXIS 150788, 2021 WL 3555947, at *21 (S.D. Tex. Aug. 11, 2021) *citing* Sapp v. Potter, No. 1:07-CV-00650, 2012 U.S. Dist. LEXIS 127740, 2012 WL 3890259, at *23 (E.D. Tex. July 26, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Doe v. Beaumont Indep. Sch. Dist., 615 F. Supp. 3d 471, 492 (E.D. TX- Beaumont Div., July 14, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Doe v. Ohio Univ., No. 2:21-CV-00858, 2023 U.S. Dist. LEXIS 52435, 2023 WL 2652482 (S.D. Ohio Mar. 27, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Doe v. Tex. A&M Univ., 634 F. Supp 3d 365, 383 (S.D. Tex. Oct. 6, 2022) . . . . . . . . . . . . . . 14

Jones v. Houston Ind. Sch. Dist., 805 F. Supp. 476, 479 (S.D. Tex. 1991), aff'd, 979 F.2d 1004. (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Krebs v. New Kensington-Arnold Sch. Dist., 2016 U.S. Dist. LEXIS 159059, 2016  WL 6820402, at *10-11 (W.D,. Pa. Nov. 17, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Prendergast v. Wylie Indep. Sch. Dist., 2018 U.S. Dis. LEXIS 215109 (E.D. Tex. Dec. 4, 2018) (citing Davis, 526 U.S. at 654) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Taylor v. Richmond State Supported Living Center, No. 4:11-3740, 2012 WL 6020372 at *5 (S.D. Tex. November 30, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 19

**CONSTITUTION**

29 U.S.C. §794 (Section 504 of the Rehabilitation Act) . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

The Americans with Disabilities Act ("ADA"); 42 U.S.C. §12101 . . . . . . . . . . . . . . . . *passim*

42 U.S.C. § 1983 ("Section 1983"). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

U.S. Const. amend. XIV, § 1, Equal Protection Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**RULES & REGULATIONS**

Federal Rules of Civil Procedure 12. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Section 504 of the Rehabilitation Act of 1973 ("Rehab Act") . . . . . . . . . . . . . . . . . . . . . . *passim*

**MISCELLANEOUS**

Section 25.085 of the Texas Education Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW B.P. by her next friends and parents Jessica and Jameson Pruden ("Plaintiff" herein) and files this *Response* to the BURKBURNETT INDEPENDENT SCHOOL DISTRICT's (hereinafter referred to as "BISD" or "the School District") *Motion to Dismiss Plaintiff's First Amended Complaint* and in support thereof Plaintiff would respectfully show this tribunal the following:

## I. BRIEF INTRODUCTION TO THE CASE

1. B.P. is a person with significant cognitive, neurological and communication disabilities. While at school she required very close and constant supervision and a number of accommodations in order to safely access the educational environment to the same extent as her non-disabled peers. A crucial accommodation to her neurological impairments is what is termed a *sensory swing.* Sadly the School District failed to assure the sensory swing was serviced and kept safe for use by students. Not surprisingly, on one occasion B.P. was not being supervised correctly and the *sensory swing* set broke. Another accommodation was to have safety met under the swing but the School District failed to assure this item was in place also. So when B.P. fell, it was onto a hard, unpadded classroom floor. She experienced severe physical injuries first requiring she be 'air-flighted' to the hospital for treatment.

2. In her *First Amended Complaint* [DE# 18] Plaintiff alleged the School Board violated B.P.'s right to *Due Process* pursuant to the 14th Amendment to the United States Constitution, specifically in that they failed to train and supervise staff and had a policy and practice of assuring equipment was maintained. Moreover, that acts and omissions of the School Board violated her right to *Equal Protection*. Moreover, Plaintiff claimed B.P. was a victim of discrimination based upon disability as contemplated by both Section 504 of the

Rehabilitation Act of 1973 ("Rehab Act"), 29 U.S.C. §794 and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 et seq.  The School District filed a *Motion to Dismiss* [DE# 20] pursuant to Federal Rules of Civil Procedure 12(b)(6).[1]  Accordingly, Plaintiff files this *Response*.

## II.  STANDARD OF REVIEW

A.    For A 12(b) Motion To Dismiss In General

3.    Plaintiff incorporates by reference that section of Defendant's *Motion* that addresses standards related to a *12(b)(6) Motion To Dismiss*, but additionally write, as follows. First, such motions are viewed with disfavor and are rarely granted. Lowrey v. Texas A&M University System, 117 F.3d 242, 247 (5th Cir. 1997). Rather, liberal discovery rules and summary judgment motions, should be used to define disputed facts and issues and to dispose of unmeritorious claims. Furstenfeld v. Rogers, No. 03-02 CV 0357 L, 2002 U.S. Dist. LEXIS 11823, at *5 (N.D. Tex. Jul. 1, 2002).

4.    In doing so, Plaintiff underscores the fact that at this stage of the proceedings she must merely plead enough facts to state a claim that is plausible on its face. Bell Atlantis v. Twombly, 550 U.S. 544, 570 (2007). Upon review by this Court, Plaintiff respectfully believes that her *First Amended Complaint* [DE# 18] clearly does so.

5.    Importantly, in reviewing this live pleading, Plaintiff also reinforces the well-settled caselaw that Plaintiff's complaint must be liberally construed in her favor and the allegations contained therein must be taken as true. Leatherman v. Tarrant County Narcotics Intelligence

---

[1]. Plaintiff withdraws her previous claim failure to train' claim under the Due Municipal Liability Claim, under the Due Process Clause of the 14th Amendment and failure to train or supervise.  Further, Plaintiff also withdraws claims alleging 'professional bad faith or gross misjudgement' asserted under Section 504 of the Rehabilitation Act.  Finally, Plaintiff also withdraws the claim related to the Texas Education Code.

and Coordination Unit, 507 U.S. 163, 164 (1993); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 2003). Further, the court must indulge all inferences in Plaintiff's favor and against the Defendant. Collins v. Morgan Stanley Dean Whitter, 224 F3d 496, 498-499 (5th Cir. 2000).

B.     Standards Of Review For Discrimination Cases

6.     The Supreme Court in Roger Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 14; 120 S. Ct. 2097; 147 L.Ed 2d 105 (2000) noted that the exercise of looking to the facts and the reasonable inferences from those facts is particularly crucial in cases regarding discrimination "as the question facing triers of fact in discrimination cases is both sensitive and difficult." Further, lower Courts should not treat discrimination cases with more scrutiny than other cases dealing with questions of fact, *citing* St. Mary's Honor Center v. Hicks, 509 U.S. 502, 524; 125 L. Ed. 2d 407; 113 S. Ct. 2742 (1993). This public policy is even more appropriate when dealing with statutes that address civil rights of the litigants and are remedial in nature, like Section 504 and the ADA, as they are in this cause.

7.     The Supreme Court has noted in a Title IX case (which is equally applicable to other civil rights cases, like the ADA and Section 504) is that, "[t]he statute is broadly worded." Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 179 (2005). Hence, "[t]here is no doubt that 'if we are to give [Title IX] the scope that its origins dictate, we must accord it a sweep as broad as its language.'" North Haven Bd. of Educ. v. Bell, 456 U.S. 512, 521 (1982); *quoting* United States v. Price, 383 U.S. 787, 801 (1966). Further, "[d]iscrimination is a term that covers a wide range of intentional unequal treatment; by using such a broad term, Congress gave the statute a broad reach." Jackson, 544 U.S. at 175.

8.     Further, "Congress surely did not intend for federal moneys to be expended to support the intentional actions it sought by statute to proscribe." Franklin v. Gwinnett County Pub.

Schools, 503 U.S. 60, 75 (1992). Moreover:

"Statutes of rehabilitation should be construed in a liberal and humanitarian mode thus effectuating successfully the legislature's objective intentions. Such construction of rehabilitative statutes promote the public interest, public welfare, public state policy and the police powers. Such salutary constructions properly disregard technical and meaningless distinctions but give the enactment the most comprehensive application of which the enactments are susceptible without violence to the language therein. Deep East Texas Regional Mental Health & Mental Retardation Services v. Kinnear, 550 S.W.2d 550, 563 (Tex. App. – Beaumont, 1994);" *see also* Tchereepnin v. Knight, 389 U.S. 332, 336 (1967) [remedial legislation should be construed broadly to effectuate its purpose].

9.      Plaintiff's *First Amended Complaint* clearly and easily meets the standards of Rules 8, 12(b)(6) as contemplated by Twombly relative to their claims based upon, the ADA and Section 504. The District's Motion For Dismiss should be dismissed, in total and in the alternative, in part.

C.      Right To Amend

10.     Nevertheless, if the Court believes that Plaintiff has failed to adequately state a claim upon which relief can be granted, then before granting the motion, Plaintiff should be given the opportunity to replead. Borninski v. Williamson No. 302 CV 1014 L, 2002 U.S. Dist. LEXIS 22346, at *4 (N.D. Tex. Nov, 18, 2002) [holds that dismissal is warranted only if, after having given the opportunity to amend, plaintiffs still fails to state a claim]; *see also* United Stated ex. rel. Adrian v. Regents of University of California *,* 363 F.3d 398, 403 (5th Cir. 2004) [citing Federal Rule of Civil Procedure 15(a) this Court holds that leave to amend should be freely given]; Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002) [notes that the Fifth Circuit supports the premise that "granting leave to amend is especially appropriate . . . when the trial court has dismissed the complaint for failure to state a claim ...].

## III.  FACTUAL ALLEGATIONS

11.     Plaintiff incorporates by reference as if fully set forth herein yje factual contentions set forth in her *First Amended Complaint.* [DE# 18].

12.     B.P. is currently fifteen (15) years old.  At all times relevant to this *Complaint* was a student enrolled at the BISD.  She has been diagnosed with Autism Spectrum Disorder, with significant sensory impairments. She also has a Speech/Language Impairment. B.P. has very limited self-help skills and requires constant close supervision while participating in academic and non-academic programs.  She also requires an escort while transitioning from program to program at the school.  In order for B.P. to to access educational services Staff had to address her sensory impairments.  The School District provided her services and accommodations pursuant to the *Individuals With Disabilities Education Act*, 20 U.S.C. §1401 *et seq*. ("IDEA") One accommodation the School District provided B.P. was to place her in a special room where there was is also what is called a *sensory swing* where she could clam herself.  When the sensory swing was ordered by the School Board it came with instruction on how it was to be maintained to that it could be used safely.   It required weekly inspection and maintenance as  critical.  Further, that proper supervision and spotting are required when the swing is used. Moreover, the swing required that their be padded surfaces underneath  it on  the floor for safety of any children who might use the swing.   The record  reflects it was not so maintained by the School Board. t was not.  So unfortunately when on or about May 6, 2022, when B.P. entered the BISD's *sensory room* to use the *swing*  she not monitored by School Staff at all. Moreover, because the swing was not maintained it was not safe for B.P. to use. When she did, the swing broke and B.P. hit the unpadded floor with such force that it caused significant physical injuries. [DE# 18, ¶7-19].

13.     B.P. was taken to the hospital where it was determined that she had suffered a loss of consciousness, injury to her thorax, injury to her abdomen, fracture of the vault of her skull, fracture to her occiput (back of the skull), other fracture of unspecified side of occiput, and a traumatic subdural hemorrhage. She then had to be air-flighted to a hospital more equipped to

meet her emergency medical needs. Such physical injuries included a cranial injury with loss of consciousness of unspecified duration; injury to thorax; injury of abdomen; fracture of vault of skull; fracture of occiput (back portion of the back of the skull), other fracture of unspecified side of occiput; and traumatic subdural hemorrhage with loss of consciousness of unspecified duration. She did not return to school that year.. The incident took a severe toll on B.P. physically, mentally, emotionally and academically. Her non-disabled peers were able to benefit from working and safe physical exercise equipment without injury. [DE# 18, ¶21-26].

## IV. <u>ARGUMENT AND AUTHORITIES -</u><br><u>THE CONSTITUTIONAL CLAIMS ARE PLAUSIBLE</u>

14.    Plaintiff incorporates by reference all the above-related paragraphs, and each one below, incorporates by reference the one above, as well as those below, with the same force and effect as if herein set forth.

A.    B.P. HAS A PLAUSIBLE RIGHTS UNDER THE CONSTITUTIONAL

15.    Section 1983 provides a cause of action to persons who, under color of law, have been deprived "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. To bring a valid claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the U.S., and (2) demonstrate that the deprivation was committed by a person acting under color of state law. Whitley v. Hanna, 726 F.3d 631, 638 (5th Cir. 2013); Jones v. Houston Ind. Sch. Dist., 805 F. Supp. 476, 479 (S.D. Tex. 1991), *aff'd*, 979 F.2d 1004. (1992).

16.    Further, Section 25.085 of the Texas Education Code requires that children, beginning at the age of six and until they reach the age of nineteen, shall attend school. This requirement is commonly referred to as 'compulsory education' and as such, creates a "property interest" in public education, protected by the Due Process Clause of the Fourteenth Amendment. Swindle

v. Livingston Parish Sch. Bd., 655 F.3d 386 (5th Cir. 2011); *see also* Goss v. Lopez, 419 U.S. 565 (1975). A compulsory education not only gives rise to a student's right to receive that education, but also a duty on behalf of local school districts to supply that education. Moreover, B.P. also has a plausible constitutional claim regarding his right to "life, liberty and safety as well as this property interest, while at school. Moore v. Willis Independent School District, 233 F.3d 871 (5th Cir. 2000). Accordingly B.P. meets the threshold requirement for a constitutional claim.

B.    PLAINTIFF HAS A PLAUSIBLE EQUAL PROTECTION CLAIM

17.    The Equal Protection Clause "is essentially a directive that all persons similarly situated should be treated alike." Brennan v. Stewart, 834 F.2d 1248, 1257 (5th Cir. 1988). A violation of equal protection occurs when "[a state actor] treats someone differently than others similarly situated." Moreover, it is well-settled that it protects students in the public schools. Ruvalcaba v. Angleton Indep. Sch. Dist., 2022 U.S. App. LEXIS 3213; 2022 WL 340592 at *8 (quoting Brennan). For a class-of-one equal protection claim, a plaintiff must demonstrate that "(1) the defendant intentionally treated plaintiff differently from others similarly situated, and (2) the defendant lacked a rational basis for the difference in treatment." Martinez v. New Deal Indep. Sch. Dist., 802 Fed. Appx. 98, 100 (5th Cir. 2020) *citing* Lindquist v. City of Pasadena, 669 F.3d 225, 233 (5th Cir. 2012). [2]

1.    The School District's Argument

18.    The School District provides one paragraph to attack B.P.'s equal protection claim. They correctly note that B.P. must show that a (1) District employee intentionally treated B.P.

---

[2]. In any case, the unequal treatment B.P. experienced at the hands of Staff was predicated on her disabilities, not in spite of them as Defendant would seem to suggest. Taylor v. Richmond State Living Center, 2012 U.S. Dist. LEXIS 170190 *16-17 (S.D. Tx., November 30, 2012).

differently from other similarly situated students, and (2) that there was no rational basis for any such difference. They cite Wilson v. Brinberg, 667 F.3d 591, 599 (5th Cir. 2012) for this proposition. They contend that B.P. has not "explained how a District employee treated other similarly situated students differently from B.P., much less show how this was done without a rational basis." [DE# 20, p. 5]. They are incorrect.

2.    B.P.'s Equal Protection Claim Is Plausible

19.    B.P. contends that as compared to her non-disabled peers, she was intentionally denied the opportunity to be educated in a safe, non-hostile environment due to her disabilities. Specifically, B.P. was known to frequently access the sensory room, and to access the sensory swing. Unlike her similarly situated peers, who upon reason, belief and inference were appropriately supervised by school staff, B.P. was left unattended on the day she was injured when using the obviously hazardous swing. This injury occurred despite the specific accommodation plan calling for constant supervision and monitoring *during any task* (emphasis added).

20.    Further, there is also no rational basis for her to have been treated differently than her peers–why should her accommodation plan be disregarded, while other students' are not? City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 450 (1985). Importantly, this Circuit has long recognized that a policy of willful blindness cannot affect "the importance of applying equal protection in schools . . . to protect students." Doe v. Beaumont Indep. Sch. Dist., 615 F. Supp. 3d 471, 492 (E.D. TX- Beaumont Div., July 14, 2022) *citing* Rosa H. v. San Elizaro Indep. Sch. Dist., 106 F.3d 648, 656 (5th Cir. 1997). Further, and at the 12(b)(6) stage, a plaintiff's burden to allege an unconstitutional policy, practice or custom is not onerous. Doe at p. 492- 493; Kelley v. City of Wake Vill., 264 Fed. App'x 437, 443 (5th Cir. 2008). In any case, B.P. has provided sufficient facts this stage of the litigation to have plausible equal protection claim.

## V.  ARGUMENT & AUTHORITIES -
## THE  FAILURE TO ACCOMMODATE CLAIM BASED UPON THE AMERICANS WITH DISABILITIES ACT AND THE REHABILITATION ACT S PLAUSIBLE

A.    DISCRIMINATION BASED UPON DISABILITY CLAIM

21.    B.P. has alleged she was a victim of discrimination based upon disability pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 ("Rehab Act") and the Americans with Disabilities Act, 42 U.S.C. 12131 et seq. ("ADA").   Section 504 Of The Rehabilitation Act of 1973 the Rehabilitation Act was enacted "to ensure that handicapped individuals are not denied jobs or other benefits because of prejudiced attitudes or ignorance of others" in federally funded programs.  Brennan v. Stewart, 834 F.2d 1248, 1259 (5th Cir.1988). The ADA is a federal anti-discrimination statute designed "[t]o provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." Delano-Pyle at 574 *citing* Rizzo v. Children's World Learning Ctrs., Inc., 173 F.3d 254, 261 (5th Cir. 1999).

22.    As the  language  in the ADA generally tracks the language set forth in the Rehabilitation Act thus the "[j]urisprudence interpreting either section is applicable to both." Hainze v. Richards, 207 F.3d 795, 799 (5th Cir.2000).  Accordingly, and under both B.P. can make a *failure to accommodate claim* for relief (1) if she has a  qualifying disability; (2) the disability and limitations were known to the School District and (3) the School District failed and refused to make reasonable accommodations for such known limitations. "If the plaintiff proves those three elements, 'the defendants are liable for denying the accommodation.'" *See* Pickett v. Texas Tech Univ. Health Sciences Ctr., 2022 U.S. App. LEXIS 16564 at *30-31 (5th Cir., June 15, 2022) [finding plausible failure to accommodate claim where university failed to provide student lecture and materials and refusal to modify certain deadlines]; see also Neely v. PSEG Texas, Ltd. Partnership, 735 F3d 242, 247 (5th Cir. 2013).

B.    THE SCHOOL DISTRICT'S MOTION TO DISMISS

23.    Here the District first correctly repeats the elements B.P. must satisfy to support this claim. To wit: Plaintiff must plead factual allegations reflecting (1) B.P. was a qualified individual with a disability; (2) her disability and its consequential limitations were known by the District; and (3) Burkburnett ISD failed to make reasonable accommodations. Plaintiff's allegations, however, fail to identify for the Court any accommodations or modifications the District refused to provide B.P. They correctly cite Smith v. Harris County, Tex., 956 F.3d 311, 317 (5th Cir. 2020) for this proposition. They state, that B.P.'s claim is based upon a premises liability defect and sounds in negligence and not intentional disability discrimination. They find support in Chupka v. Pflugerville Indep. Sch. Dist., 2022 U.S. LEXIS 9556 at *5 (5th Cir. Apr. 8, 2022) ["A plaintiff seeking compensatory damages must show intentional discrimination to prevail on an ADA claim, as negligence is insufficient. We require something more than deliberate indifference."] for this proposition. They otherwise provide no argument or caselaw in support of the proposition that the incident in question is really one related to a premises liability claim.[3]

C.    THE MOTION CAN BE DENIED BECAUSE IT IS POORLY BRIEFED

24.    The section of Defendant's *Brief* is anemic, and scarcely briefed. It contained no caselaw in support of any argument, and in fact has no argument either. Accordingly, said *Motion* should be denied for this reason alone. L&A Contracting v. Southern Concrete Services, 17 F.3d 106, 113 (5th Cir. 1994); Boggs v. Krum Independent School District, 376 F. Supp. 3d 714 (E.D. TX-Sherman Division, March 21, 2019) *citing* Audler v. CBC Innovis Inc., 519 F.3d 239, 255 (5th

---

[3]. While they do not say so a Plaintiff may plead alternative theories of recovery. *See* Independent Enterprises v. Pittsburg Water & Sewer Authority, 103 F.3d 1165, 1175 (3rd Cir. 1997) [Fed. R. Civ. P. 8(d)(2) and (3) permits alternative and even inconsistent legal causes of actions and factual allegations and a court may not construe one claim as precluding the other].

Cir. 2008) ["A party 'waives an issue if he fails to adequately brief it.'"]. Moreover, in this case Plaintiff meets the elements.

D.     THE MOTION CAN BE DENIED BECAUSE B.P.'S CLAIMS MEET THE ELEMENTS

25.     As noted above, in order for B.P. to have a plausible *failure to accommodate claim* she must show (1) if she has a qualifying disability; (2) the disability and limitations were known to the School District and (3) the School District *failed* (emphasis added) and refused to make reasonable accommodations for such known limitations.

26.     Here it is uncontroverted that B.P. is a person with a disability. Moreover, it is uncontroverted that the School District knew about her disabilities, their limitations and the need for a reasonable accommodations. Here the School District failed and reused to provide her the reasonable accommodation to which she surely deserved. For instance, the School District knew that because of multiple-disabling condition and limitations she was snot able to keep herself safe. Accordingly her educational plan required she be provided at least one accommodation, close supervision. Sadly, on the day of the incident where she was injured B.P., the School District failed and refused to provide her any supervision, let alone close supervision. Cook v. Morgan Stanley Smith Barney, 2014 U.S. Dist. LEXIS 112681 * 21-22 (S.D. TX- Houston Div., August 14, 2014). [discussing issues of supervision as a reasonable accommodation concern]. Here the School District does not even address the 'failure to supervise" as a form of disability discrimination. It is waived. They do address Plaintiff's contention that the failure to provide a safe swing was a failure to accommodate but argue its negligence and not disability discrimination. But as noted in the next section, that argument fails.

27.     B.P. argues in addition and in the alternative that the failure of the School District to have a safe swing, was a failure to accommodate and a violation of both the Rehab Act and the ADA

thereby.  Specifically, and in regard to the elements noted above, the School District knew that because of B.P.'s neurological impairments she required time in a sensory room with a *sensory swing*.  The School District argues that injuries cause by the swing breaking are related to negligence and not disability discrimination.  That is not correct.  The *Individuals With Disabilities Education Act* very specifically contemplates the purchase of "appropriate equipment" by a School District for a student with disability.  Pace v. Bogalusa City Sch. Bd., 403 F.3d 272, 294 (5th Cir. 2005) *citing* 20 U.S.C. 1404 [requiring expenditure of funds for equipment to accommodate student with a disability.  Surely, a swing that breaks is not "appropriate." The Panel further noted that:

"... IDEA overlaps with Section 504 (of the Rehab Act) and Title II (of the ADA) in terms of the children it covers. Thus, IDEA may require a school district to modify programs or facilities to achieve these ends for an individual student. IDEA funds may be used for removal of architectural barriers or other improvements to accessibility in order to promote appropriate education for children with disabilities.

28.    Here B.P. has clearly pled sufficient facts and therefore can easily meet the elements. The District knew she had a disability, and even more specifically knew of her limitations and accommodations needed to address such limitations. Her disabilities and need for related accommodations was open and obvious.  Smith v. Harris Cnty., 956 F.3d 311, 317- 318 (5th Cir. 2020). However,, the District did not provide the accommodations she needed–specifically, constant supervision, monitoring while performing any task including when using the swing, a safe swing and a padded mat underneath the swing.  Pickett, see also Bennett-Nelson v. La. Bd. of Regents, 431 F.3d 448, 455 (5th Cir. 2005); Estate of Esquivel v. Brownsville Indep. Sch. District, 2018 U.S. Dist. LEXIS 231738 * 16-17 (S.D. TX.- Brownsville Div., September 11, 2018)[denying motion for summary judgment when plaintiffs provided sufficient material facts for a reasonable jury to infer that the Defendant failed to provide 'reasonable accommodations'

that were provided by the physician]. As such, both the ADA and Rehab Act *failure to accommodate* claims are plausible at this juncture of the litigation.

## VI.  ARGUMENT AND AUTHORITIES - PLAINTIFF'S FAILURE TO KEEP SAFE  CLAIM IS PLAUSIBLE

A.    THE DEFENDANT'S ARGUMENT

29.    The Defendant School District contends Plaintiff has failed to plead sufficient facts to establish a plausible 'failure to keep safe' claim pursuant to Section 504. In this section the District provides a few cases to merely note the elements of such a claim[4] [DE# 20, p. 8, 9] without any argument as to whether or not B.P. meets or does not meet such elements. Rather, they mention without argument, that the text of the Rehabilitation Act requires the alleged discrimination to be *solely* related to disability, and purportedly B.P. has not me that burden.

B.    THE MOTION TO DISMISS THIS CLAIM SHOULD BE DENIED BECAUSE IT IS NOT ADEQUATELY BRIEFED

30.    The section of Defendant's *Brief* is anemic, and scarcely briefed. It contained no caselaw in support of any argument, and in fact has no argument either. Accordingly, said *Motion* should be denied for this reason alone. L&A Contracting v. Southern Concrete Services, 17 F.3d 106, 113 (5th Cir. 1994); Boggs v. Krum Independent School District, 376 F. Supp. 3d 714 (E.D. TX-Sherman Division, March 21, 2019) *citing* Audler v. CBC Innovis Inc., 519 F.3d 239, 255 (5th Cir. 2008) ["A party 'waives an issue if he fails to adequately brief it.'"]. Moreover, and in any case Plaintiff can meet the elements.

B.    PLAINTIFF HAS A PLAUSIBLE 'FAILURE TO KEEP SAFE' CLAIM

---

[4]. Lance v. Lewisville Indep. Sch. Dist., 743 F.3d 982, 995-96 (5th Cir. 2014); Harrison v. Klein Indep. Sch. Dist., 856 Fed. App'x 480, 484 (5th Cir. 2021); C.C. v. Hurst-Euless-Bedford Indep. Sch. Dist., 641 Fed. App'x 423, 426 (5th Cir. 2016).

31.     Plaintiff has indeed pled sufficient facts to demonstrate that (1) she is an individual with a

disability; (2) she was mistreated on the basis of her disability; (3) such mistreatment was

sufficiently severe or pervasive that it altered the condition of her education and created an

abusive educational environment; (4) the District knew about the mistreatment; and (5) the

District was deliberately indifferent to that mistreatment.  Doe v. Tex. A&M Univ., 634 F. Supp

3d 365, 383 (S.D. Tex. Oct. 6, 2022) *citing* Lance, 743 F.3d at 996.  Moreover, she can satisfy

the element that the alleged discrimination was tethered to her disabilities and whether or not said

discrimination was *solely* related to her disability is not relevant at this stage of the litigation.

    1.      Plaintiff is An Individual With a Disability

32.     This element is uncontroverted.

    2.      Plaintiff Was Mistreated Due To Her Disability

33.     Plaintiff has pled sufficient facts demonstrating mistreatment by the District. Specifically, that

the District failed to properly install and maintain the sensory swing, which was required by the

manufacturer's installment and use guide.  Indeed, Plaintiff has provided plausible facts that the

swing had been left in disrepair for so long a time that it would have been obvious to any school

District Staff member that the swing was unsafe for use by anyone, let alone a student with

special needs and importantly, needs for constant supervision. Moreover, and importantly,

Plaintiff was permitted to access the swing without supervision, despite constant monitoring by

school staff being required by her accommodation plan.

    c.      Such Mistreatment was Severe and Pervasive and Created an Abusive Environment

34.     In examining whether discrimination is sufficiently severe or pervasive in the context of a hostile

educational environment claim, the following factors are considered: "(1) the frequency of the

discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct was physically

threatening ... (4) whether the conduct interferes with [educational] performance; and (5) whether the complained-of conduct undermines a plaintiff's [educational] competence." Bryant v. Dayton Indep. Sch. Dist., 2021 U.S. Dist. LEXIS 150788, 2021 WL 3555947, at *21 (S.D. Tex. Aug. 11, 2021) *citing* Sapp v. Potter, 2012 U.S. Dist. LEXIS 127740, 2012 WL 3890259, at *23 (E.D. Tex. July 26, 2012).

35.    The facts and reasonable inferences related there to evidence that the *sensory swing* was in a state of disrepair. Also, that B.P. was frequently exposed to the dangerous swing.  Moreover, and in addition to the above, it is self-evident that the failure to properly maintain the safety of a load-bearing swing, for a child with a disability who requires constant supervision, can easily be classified as severe. Further, such a blatant disregard for the dangerous state of the swing amounted to severe and pervasive mistreatment of B.P.–it would have been only a matter of time before the swing broke and a student was injured.  Unfortunately, B.P. was the one to suffer the consequences of such an unsafe environment.

36.    In Davis v. Monroe County, Bd. of Educ , 526 U.S. 629 (1999) the Court noted that to maintain a plausible hostile educational environment claim, the discrimination must result in a "concrete, negative effect" on the plaintiff's education. Prendergast v. Wylie Indep. Sch. Dist., 2018 U.S. Dis. LEXIS 215109 (E.D. Tex. Dec. 4, 2018) *citing* Davis, 526 U.S. at 654. Such "negative effects" can include, but are not limited to, missing school or having to be hospitalized due to the discrimination. Prendergast, 2018 U.S. Dist at *22 (citing Davis, 526 at 634; Murrell v. Sch. Dist. No. 1, Denver, Colo., 186 F.3d 1238, 1248-49 (10th Cir. 1999).  B.P. meets these elements

d.    The District Was On Notice

37.    Finally, the School District was on notice of the mistreatment and was deliberately indifferent to the mistreatment.  For the purposes of this element  an appropriate person is "an official of the

recipient entity [of federal funds] with authority to take corrective action to end the discrimination who has actual notice of the alleged discriminatory practice. Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 291, 118 S. Ct. 1989, 141 L. Ed 2d 277 (1998). The 5th Circuit has not explicitly defined what "actual notice" or what the status of the official must be as it is rather "necessarily a fact-intensive inquiry," *see* Doe v. Sch. Bd. of Broward Cty., 604 F.3d 1248, 1256 (11th Cir. 2010) because the ultimate question of who is an appropriate person is 'necessarily a fact-based inquiry' as an officials role varies among schools. In short, B.P. satisfies this element at this time, and can be specifically addressed, if and when necessary, in discovery. *See also* Krebs v. New Kensington-Arnold Sch. Dist., 2016 U.S. Dist. LEXIS 159059, 2016 WL 6820402, at *10-11 (W.D,. Pa. Nov. 17, 2016) [determining that allegations of meetings, conferences, and consults with district personnel were sufficient to demonstrate actual notice; *see also* Doe v. Ohio Univ., 2023 U.S. Dist. LEXIS 52435, 2023 WL 2652482 (S.D. Ohio Mar. 27, 2023) [determining that a genuine issue of material fact existed regarding whether the school had actual notice of the discrimination, and declined to dismiss such claims on a motion for summary judgment.]. Here Staff, including Educators, Cleaning and facility Operations witnessed its status of disrepair on a near daily basis. At this stage of the litigation B.P. has shown that a Staff Person with the ability to submit a repair request and get it fixed or replaced, were on notice and failed to act.

    e.    The School District Was Deliberately Indifferent.

38.    The Fifth Circuit defines deliberate indifference requires the plaintiff to show: (1) an unusually serious risk of harm existed; (2) the defendant had actual knowledge of, or was willfully blind to an elevated risk and (3) the defendant failed to take steps to address the risk. Leffall v. Dallas Independent School District, 28 F.3d 521, 530 (5th Cir. 1994. In short, that the defendant's

conduct was "clearly unreasonable in light of the known circumstances." Harrison v. Klein Indep. Sch. Dist., 856 Fed. Appx. 480, 484 (5th Cir. 2021) *citing* Davis, 526 U.S. at 648). In Harrison, the Court determined that there was "nothing more" the defendant district could have done in response to allegations of discrimination. Here the state of the swing would have been apparent to any School District Staff member who had seen it. Such action–or failure to take action, for that matter–is clearly unreasonable in light of known circumstances. As such, the acts and omissions by the District clearly amount to deliberate indifference.

f.     The Issue Of Whether The Discrimination Was Solely Related To P.D.'s Disability Is Not Relevant Att This Stage Of The Litigation And In Any Case, Not At All

39.     In Bennett-Nelson v. Louisiana Board of Regents, 431 F.3d 448, 454 (5th Cir. 2005); the Court wrote "the rights and remedies afforded plaintiffs under Title II of the ADA are almost entirely duplicative of those provided under §504 of the Rehabilitation Act.[5] The only material difference between the two provisions lies in their respective causation requirements. Section 504 of the Rehabilitation Act provides that "no otherwise qualified individual with a disability in the United States … shall, *solely* by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance …". 29 U.S.C. § 794(a). By contrast, under Title II of the ADA, "discrimination need not be the sole reason" for the exclusion of or denial of benefits to the plaintiff. *See* Woodhouse v. Magnolia Hosp., 92 F.3d 248, 253 (5th Cir. 1996).

40.     In Pace v. Bogalusa the Panel concluded that the different causation requirements were immaterial where the plaintiff's challenge was to architectural barriers. *See* 403 F.3d at 288-89.

---

[5].  Plaintiff proffers that "solely by reason of disability" should be "read as", that the real reason the person was ia victim was due to the person's disability.

The rationale underlying this conclusion, although not expressly stated, is straightforward.  In addition to their respective prohibitions of disability-based discrimination, both the ADA and the Rehabilitation Act impose upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals.[6]  They noted that "Where a defendant fails to meet this affirmative obligation, the cause of that failure (solely or not) is irrelevant.  That is because there is always another reason, real or imagined, actual or implied, that suggests a Defendant could have taken a course of conduct for other than discriminatory reasons. *See* Farmer v. Brennan, 834 F.2d 1248, 1261 (5th Cir. 1998) [noting "fact issues" in the Section 504 context was whether or not "sole" basis was disability, is an issue best left for a *Motion For Summary Judgment*, after discovery has been completed]; *see also* Pushkin v. University of Colorado, 658 F.2d 1372, 1385 (10th Cir. 1981) ["it would be a rare case indeed in which a hostile discriminatory purpose or discriminatory intent to discriminate *solely* on the basis of handicap could be shown].

41.  While it was noted in an employment related case, the following wise commentary in McNely v. Ocala Star-Banner Corp., 99 F.3d 1068, 1074 (11th Cir. 1996) is worth considering:

"A standard that imposes liability only when an employee's disability is the sole basis for the decision necessarily tolerates discrimination against individuals with disabilities so long as the employer's decision was based—if ever so slightly—on at least one other factor. A liability standard that tolerates decisions that would not have been made in the absence of discrimination, but were nonetheless influenced by at least one other factor, does little to "eliminate" discrimination; instead it indulges it.

## SUMMARY AND CONCLUSION

---

[6].  Title II of the ADA requires public entities to (1) make "*reasonable modifications* to rules, policies, or practices"; (2) "remove … architectural, communication, or transportation barriers"; and (3) "provide auxiliary aids and services", so as to enable disabled persons to participate in programs or activities. 42 U.S.C. § 12131(2). Likewise, the regulations implementing §504 mandate "each program or facility" to which the provision applies must be "readily accessible and usable by handicapped persons". 28 C.F.R. § 42.521(a). Covered entities may be required to facilitate access via the "acquisition or redesign of equipment, reassignment of services to accessible buildings, assignment of aids to beneficiaries ...... or any other method that results in making its program or activity accessible to handicapped persons". Id. at §42.521(b).

42.     In summary the Court's have declined to dismiss claims at this stage of the litigation where a person with a disability has experienced a physical injury. Doe at 384 *citing* Taylor v. Richmond State Supported Living Center, No. 4:11-3740, 2012 WL 6020372 at *5 (S.D. Tex. November 30, 2012).

43.     To the extent there are facts where a reasonable fact finder or juror could draw an inference that Plaintiff's claims have viability, as they are in this case, dismissing the case at this juncture in the litigation, improper. Bethany T. v. Raymond School District Unit 33, 2013 U.S. Dist. LEXIS 67012 *3 (D.C. N.H., May 10, 2013) [what is reasonable is best left for R. 56 of the civil rules]; T.K. v. New York City Dept. of Educ., 2011 U.S. Dist. LEXIS 44682, 2011 WL 1549243 (E.D.N.Y. April 25, 2011) [deliberate indifference, is "a question for the fact finder"].

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant's *Motion To Dismiss* pursuant to Rules 12(b)(6) be denied in its entirety or in part. In the alternative, that Plaintiff be permitted to replead and amend their Complaint, and for such other relief that may be afforded in law, or in equity or as to both.

Respectfully submitted,

Mr. Martin J. Cirkiel, Esq.
Texas Bar No. 00783829
Federal ID No. 21488
marty@cirkielaw.com [Email]
Cirkiel Law Group, P.C.
1901 E. Palm Valley Blvd.
Round Rock, Texas 78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]

Mr. Hunter A. Nunn
Texas Bar No. 24083587
The Law Office of Hunter A. Nunn

Response To Motion To Dismiss Plaintiff's First Amended Complaint                                          19

P.O. Box 191385
Dallas, Texas 75219
(972) 863-9592 [Telephone]
(972) 767-0338 [Facsimile]
hunter@hnunnlaw.com [Email]
ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on this the 16th day of December 2024, I electronically filed the foregoing documents with the Clerk of Court using the CM/ECF system. The following individuals shall be served in this matter via the CM/ECF system:

Ms. Meredith Walker, Attorney
Texas Bar No. 24056487
mwalker@wabsa.com [Email]
WALSH GALLEGOS KYLE ROBINSON & ROALSON, P.C.
105 Decker Court, Suite 700
Irving, Texas 75062
(214) 574-8800 [Telephone]
(214) 574-8801 [Facsimile]
COUNSEL FOR THE DEFENDANT

/s/ Martin J. Cirkiel
Martin J. Cirkiel