IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| B.P. b/n/f JESSICA and JAMESON PRUDEN, § § § | |
| Plaintiff, § § | |
| v. § | Civil Action No. 7:24-cv-00060-BP |
| § | |
| BURKBURNETT INDEPENDENT SCHOOL DISTRICT, § § § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

In this case, B.P., a minor ("B.P."), through B.P.'s parents Jessica and Jameson Pruden, sues the Burkburnett Independent School District ("BISD") for violating B.P's constitutional rights and for discrimination based on a disability. ECF No. 18. Now before the Court are BISD's Motion to Dismiss Plaintiff's First Amended Complaint and supporting Brief (ECF Nos. 19, 20), B.P.'s Response (ECF No. 21), and BISD's Reply (ECF No. 22). After considering the Motion, pleadings, and applicable legal authorities, the Court **GRANTS** BISD's Motion (ECF No. 19) and **DISMISSES** B.P.'s Due Process and Equal Protection claims under 42 U.S.C. § 1983; failure to keep safe and to accommodate claims under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"); and failure to accommodate claims under the Americans with Disabilities Act, 42 U.S.C. §12131, *et seq.* ("ADA"). Furthermore, the Court **DISMISSES without prejudice** B.P.'s withdrawn claims for failure to train and failure to train or supervise under the Due Process Clause of the 14th Amendment; for professional bad faith or gross misjudgment under Section 504, and for violation of the Texas Education Code.

**I.     BACKGROUND**

The First Amended Complaint ("FAC") sets out the following facts in support of B.P.'s claims. ECF No. 18. B.P. was a student at Burkburnett Middle School who qualified for special education services under the eligibility criteria of Autism and Speech/Language Impairment. ECF No. 18 at 3. B.P. attended school with accommodations in place consistently from February 7, 2021 through February 6, 2024. *See id*. The accommodations provided support and services for B.P. to be successful in the educational environment and for B.P.'s safety as well as the safety of others. The accommodations included "constant supervision throughout the day; monitoring while performing any tasks; prompting, cueing, social skills, redirecting, monitoring, and escort during transitions; a staff-to-student ratio of 1:1; or 1:2; or 3:10; depending on the setting; frequent redirection and assistance; and close supervision and visual supports." *See id*.

B.P. also had access to a "sensory room," which contained a Padded Frog Swing that hung from a pipe mounted through the ceiling tiles. *Id*. at 4.  On or around May 6, 2022, while B.P. was on the swing, it broke, and B.P. suffered serious injuries that required B.P. to be airlifted to Cook Children's Hospital in Fort Worth for treatment. *Id.* at 4-5. Due to the severity and nature of the injuries, B.P. did not return to school during the 2021-22 academic year. *See id*. at 5. B.P. alleges that the District failed to offer appropriate support, related services, or further evaluations after the incident. *See id*. B.P. also alleges that BISD failed to provide procedural safeguards in a timely manner and that B.P.'s non-disabled peers benefitted from working, safe physical exercise equipment without injury, while BISD did not provide safe equipment to B.P. *See id*.

On May 6, 2024, B.P. sued BISD under 42 U.S.C. § 1983 for constitutional violations under the Fourteenth Amendment; for violations of Section 504, the ADA, and the Texas Human Resources Code ("THRC"); and for negligence. ECF No. 18 at 6-9. B.P. later dismissed the claim

2

for failing to provide an appropriate public education. ECF No. 15. Following the Court's Order to replead (ECF No. 16), B.P. filed the FAC asserting claims under § 1983, Section 504, and the ADA. ECF No. 18. In response to BISD's Motion to Dismiss, B.P. withdrew the failure to train and failure to train or supervise claims under the Due Process Clause of the 14th Amendment; claims for professional bad faith or gross misjudgment under Section 504, and the claim under the Texas Education Code. ECF No. 21 at 7.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim for relief, Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Rather, the complaint must include enough facts "to raise a right to relief above the speculative level" with the court operating "on the assumption that all the complaint's allegations are true." *Id.*

District courts "can grant a motion to dismiss only if it appears beyond doubt that the plaintiff can prove no set of facts in support of h[er] claim that would entitle him to relief." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citing *Leffall v. Dall. Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994)). Thus, "[a] complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief." *Jones v. Bock*, 549 U.S. 199, 215 (2007). When considering a Rule 12(b)(6) motion, courts must "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff . . . and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'"

*Yumilicious Franchise, LLC v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

There exists a "well-established policy that the plaintiff be given every opportunity to state a claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)). It is federal policy to decide cases on the merits rather than technicalities, and thus when possible, the Fifth Circuit has recommended that suits be dismissed without prejudice on Rule 12 motions. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *Hines v. Wainwright*, 539 F.2d 433, 434 (5th Cir. 1976) (vacating and remanding a Rule 12(c) dismissal with instructions to the district court to dismiss without, instead of with, prejudice).

As a result, courts generally allow plaintiffs at least one opportunity to amend following a Rule 12 dismissal on the pleadings. *Great Plains Tr. Co.*, 313 F.3d at 329; *see In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, 997 F. Supp. 2d 526, 548–49 (N.D. Tex. 2014) (Boyle, J.) (dismissing for failure to state a claim without prejudice, as dismissing with prejudice would be "too harsh a sanction"); *Parker v. Allstate Ins. Co.*, No. 3:16-cv-00892-CWR-FKB, 2017 WL 4287912, at *1 (S.D. Miss. Sept. 27, 2017) ("It is well-established that plaintiffs who fail to meet their burden on a motion for judgment on the pleadings and yet may still have a viable avenue to recover should be granted leave to amend their complaint and make their best case." (citation omitted)). However, courts may appropriately dismiss an action with prejudice if the court finds

4

that the plaintiff has alleged her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

## III. ANALYSIS

BISD moves to dismiss all of B.P.'s claims under Fed. R. Civ. P. 12(b)(6), arguing that they do not state a claim upon which relief can be granted. BISD argues that B.P. did not sufficiently allege facts that it violated B.P.'s constitutional or statutory rights. Further, BISD alleges that B.P. has not pleaded facts to show that it had a policy or custom that violated B.P.'s constitutional rights.

### A. B.P. does not allege enough facts to state § 1983 claims against BISD for substantive or procedural due process and equal protection violations.

B.P. argues that BISD's indifference to its own policies and applicable law led to B.P.'s harm. ECF No. 18 at 8-9. However, even alleged indifference to policies and causation of harm do not in themselves prove a constitutional violation. Section 1983 "is not itself a source of substantive rights" but "a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Id.* To state a § 1983 claim, B.P. must (1) allege a violation of a right secured by the Constitution or laws of the United States, and (2) show that a person acting under color of state law committed the deprivation. *Leffall*, 28 F.3d at 525.

#### 1. B.P. does not adequately plead a procedural due process violation.

The Fourteenth Amendment forbids the state from depriving an individual of "life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. The Procedural Due Process clause does not safeguard an infinite number of interests. Instead, a plaintiff alleging deprivation of the right to procedural due process must plead two elements: (1) the state interfered with a liberty or property interest; and (2) the procedures attendant upon that deprivation were constitutionally insufficient. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

B.P. alleges a right to public education and contends that BISD "failed to sufficiently train [and supervise] staff to address the needs of children in general – and especially a student with a disability like B.P." ECF No. 18 at 8, 21 at 11. B.P. further alleges that "[s]uch failures were a moving force in violating the rights of B.P. as contemplated by Due Process of the Fourteenth Amendment…" ECF No. 18 at 8. BISD acknowledges that B.P. has a right to public education, but it argues that the FAC "lacks any allegations reflecting that [it] deprived B.P. of [the] entitlement to a public education" ECF No. 22 at 1.

The FAC does not plead facts to show how BISD deprived B.P. of an appropriate level of due process. It does not state that B.P.'s family asked for any sort of hearing or other right to be heard that BISD denied. *See Goss v. Lopez,* 419 U.S. 565, 579 (1975). B.P. stated no facts about BISD's actions in response to the incident at issue, other than describing the steps school officials took on the day of the incident. ECF No. 18 at 5. Accordingly, the FAC does not allege enough facts to support a procedural due process claim.

### 2. B.P. does not plead facts to support a substantive due process claim.

The right to substantive due process protects individuals from the government's arbitrary abuse of power to deprive the person of liberty or property. *Brennan v. Stewart*, 834 F.2d 1248, 1256-57 (5th Cir. 1988). "Public officials violate substantive due process rights if they act arbitrarily or capriciously." *Finch v. Fort Bend Indep. Sch. Dist.*, 333 F.3d 555, 562-63 (5th Cir. 2003). A public official's actions are arbitrary or capricious when they are not rationally related to a legitimate government interest. *Simi Inv. Co. v. Harris Cnty.*, 236 F.3d 240, 251 (5th Cir. 2000).

The FAC alleges that BISD violated B.P.'s constitutional rights "under color of state and federal law when it permitted [B.P.] to be subjected to the acts, omissions, wrongs and injuries" which caused physical, emotional, and psychological harm and damages. ECF No. 18 at 5-6. BISD

responds that "[p]laintiff's boilerplate statements regarding due process claims will not suffice to plead a cognizable claim against [BISD]". ECF No. 20 at 11.

The FAC's limited facts do not satisfy Rule 12(b)(6)'s requirement. Although it states that BISD employees were acting under color of law, B.P. does not plead any facts supporting a conclusion that they abused their power or acted arbitrarily. *Finch*, 333 F.3d at 562-63. This claim meets only one of the elements necessary for a substantive due process violation, and B.P. pleads no facts to support the alleged violation. Accordingly, dismissal of this claim is proper.

### 3. B.P. does not state facts to show an equal protection violation.

To state a claim under the Equal Protection Clause, the FAC must state that B.P. (1) "received treatment different from that received by similarly situated individuals" and (2) "the unequal treatment stemmed from a discriminatory intent." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015) (quoting *Priester v. Lowndes Cty.*, 354 F.3d 414, 424 (5th Cir. 2004)). B.P. meets the discriminatory intent requirement by pleading facts to show "that the decision maker singled out a particular group for disparate treatment and selected [their] course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Id.*

B.P. asserts membership in a "class-of-one" and asserts BISD's discrimination because of B.P.'s disability *Id*. BISD responds that B.P. "has not identified any other students in [the FAC] or otherwise explained how a District employee treated other similarly situated students differently from B.P., much less show how this was done without a rational basis" ECF No. 20 at 11.

Disability is not a suspect class for purposes of equal protection. *Headrick as Next Friend of S.S. v. Burleson Indep. Sch. Dist.*, No. 3:22-cv-02480-E, 2023 WL 6149139 at *4 (N.D. Tex. Sept. 20, 2023) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 442 (1985)). As pleaded, B.P.'s equal protection claim does not state a claim as a matter of law. Because B.P. has

7

not pleaded enough facts to show any of the three underlying constitutional violations, the Court must dismiss B.P.'s § 1983 claim.

**B.     B.P. does not adequately plead municipal liability under § 1983.**

Even if B.P. had pleaded facts to support a constitutional violation, the FAC does not sufficiently alleged that BISD is liable under § 1983. To state a claim for municipal liability under § 1983, B.P. must allege "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

**1.     B.P. has not shown an official policy that BISD violated.**

The first element of a § 1983 municipal liability claim requires the plaintiff to show an official policy. The definition of "official policy" applies not only to municipalities, but also to school districts. *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995). An "official policy" is either "(1) a policy statement officially adopted and promulgated by an official with policymaking authority or (2) a persistent, widespread practice of district officials or employees that is so common and well-settled as to constitute a custom that fairly represents district policy." *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992). A municipality's official policy is:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Id.*; *Eugene,* 65 F.3d at 1304. B.P. must specifically identify each policy that allegedly caused constitutional violations, and the Court must determine whether each policy or custom is facially

8

constitutional or unconstitutional. *M.D. by Stukenberg v. Abbott*, 907 F.3d 237, 253 (5th Cir. 2018); *Piotrowski v. City of Hous.*, 237 F.3d 567, 578-79 (5th Cir. 2001).

The FAC specifically states that BISD "had an actual policy, practice, and custom of conscious and deliberate indifference to federal and state law, federal and state administrative directives, and BISD's own policies and procedures regarding the treatment of B.P. …" ECF No. 18 at 9. However, B.P. pleads no facts to support this conclusory claim. *See id*. Further, B.P. did not brief anything further about this policy in Response to the Motion, and BISD noted "Plaintiff [withdrew the] failure to train claim, which effectively defeat[ed] Plaintiff's constitutional claims against the District as Plaintiff cannot direct the Court to any policies or customs of which the [BISD] Board of Trustees had actual or constructive knowledge." ECF Nos. 21, 22 at 2. In the absence of facts to show a policy that BISD violated, B.P. does not meet the burden to sustain a claim for municipal liability against BISD.

### 2. B.P. has shown an official policymaker.

The second element of a § 1983 municipal liability claim requires B.P. to plead that the person acting on behalf of the BISD was an official policymaker. The policymaker must have final policymaking authority and take the place of the governing body in a designated area of the municipality's administration. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Webster v. City of Hous.*, 735 F.3d 838, 841 (5th Cir. 1984). A municipality's governing body may delegate policymaking authority expressly or implicitly. *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984). The FAC does not explicitly plead that there was any policymaker. *See* ECF No. 18. However, B.P. alleges that "the BISD school board has a duty to keep equipment used by students in working order and in safe condition" and implies that the school board is the policymaker. ECF No. 18 at 8. BISD does not dispute this point. *See* ECF No. 20 at 12-13. Under Texas law, an

9

independent school district's final policymaking authority rests with the district's board of trustees. *Jett v. Dall. Indep. Sch. Dist.,* 7 F.3d 1241, 1245 (5th Cir. 1993). Thus, B.P. adequately identifies an official policymaker for purposes of the § 1983 claim.

### 3. B.P. did not show that a policy was the moving force behind a constitutional violation.

To plead that a policy is the moving force behind a constitutional violation, "a plaintiff must show a direct causal link between the municipal policy and the constitutional deprivation." *Piotrowski*, 237 F.3d at 580. B.P. must demonstrate that the policymaker acted with "deliberate indifference" to the policy's known or obvious unconstitutional consequences. *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997). To act with deliberate indifference, a state actor must know of and disregard an excessive risk to the victim's health or safety. *Id; see McClendon v. City of Columbia,* 305 F.3d 314 (5th Cir. 2002).

B.P. alleges a deprivation of due process and equal protection rights. ECF No. 18 at 8. To support these claims, B.P. alleges a disability of which BISD was aware, BISD's failure to train or adequately supervise its staff, and BISD's "actual policy [] of conscious and deliberate indifference" to relevant laws and its own policies. ECF No. 18 at 8-9. B.P. alleges that "such failures were a moving force in [B.P.'s] injuries. *Id.* In response, BISD again argues that the FAC is "devoid of factual allegations," to support that its policies caused or in any way related to any of the B.P.'s constitutional claims, and that "boilerplate recitation will not suffice to overcome the [] Motion to Dismiss." ECF No. 20 at 13.

B.P. has not properly pleaded that a BISD policy was a moving force behind a constitutional violation because the FAC does not allege facts sufficient to show that any constitutional violations occurred. Furthermore, B.P. has not provided any factual support showing that any of BISD's policies caused B.P.'s injuries. Nor does the FAC provide sufficient

10

facts to allow the Court to make a reasonable inference about BISD's role in that incident. B.P.'s conclusional assertions are insufficient to plead the facts necessary to support claims of municipal liability. Therefore, the Court also must dismiss B.P.'s municipal liability claims under § 1983.

### 4.     B.P. does not allege facts to show liability on a ratification theory.

Under § 1983, "a municipality or local governmental entity such as an independent school district may be held liable only for acts for which it is actually responsible." *Doe v. Dall. Indep. Sch. Dist.*, 153 F.3d 211, 215 (1998) (citations omitted); *see Valle v. City of Hous.,* 613 F.3d 536, 541-42 (5th Cir. 2010) (stating elements for municipal liability). Accordingly, "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Social Servs. of New York*, 436 U.S. 658, 691 (1978). However, a municipality may be liable if it ratified the unlawful conduct. *Praprotnik*, 485 U.S. 112 (1988).

> As the Supreme Court explained in that case,
>
> [w]hen a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

*Id.* at 128 (emphasis in original). The ratification theory "is necessarily cabined in several ways ... to prevent [it] from becoming a theory of *respondeat superior*." *Milam v. City of San Antonio*, 113 F. App'x. 622, 626-27 (5th Cir. 2004). For example, the mere failure to investigate a subordinate's decision does not amount to ratification, and policymakers who simply go along with a subordinate's decision do not thereby vest final policymaking authority in the subordinate. *Id*. Additionally, courts must apply the ratification theory with the understanding that "[p]olicymakers alone can create municipal liability, and so any violation must be causally traceable to them, not

11

just to their subordinates." *Id*.

Under the law, BISD cannot be liable to B.P. on a *respondeat superior* theory. As to BISD's potential liability for ratification of its agents' conduct, the FAC alleges only that "BISD ratified the acts, omissions and customs of school district personnel and staff." ECF No. 18 at 9. The FAC also claims that BISD's school board did not follow its own policies and relevant laws and did not properly train and supervise its staff, but not that it thereby ratified the acts of its subordinates for purposes of § 1983 liability. *See id*. at 8. However, the pleading does not contain facts to support this generalized assertion. Accordingly, to the extent that B.P. attempts to establish liability on a ratification theory, she has not pleaded sufficient facts to state a plausible claim. *See Barrow v. Greenville Indep. Sch. Dist*., 480 F.3d 377, 380 (5th Cir. 2007) ("A school district has no vicarious liability under § 1983.").

### C.    B.P. does not state facts to show disability discrimination.

B.P. asserts that BISD violated Section 504 by failing to provide B.P. a nonhostile educational environment. Though B.P. refers to this claim as a "failure to keep safe" claim, other courts in this circuit classify such a claim as one for hostile educational environment. *See e.g. Harrison v. Klein Indep. Sch. Dist*., 856 F. App'x 480, 480 (5th Cir. 2021); *D.M. v. Duncanville Indep. Sch. Dist.*, No. 3:24-cv-00606-N, 2025 WL 50609, at n.1 (N.D. Tex. Jan. 7, 2025). Both BISD and B.P. cite the same elements the Fifth Circuit has used to analyze a hostile environment claim, and B.P. even later refers to the same claim as a "hostile educational environment claim." *See* ECF Nos. 20 at 15, 21 at 19; *see also Lance v. Lewisville Indep. Sch. Dist*., 743 F.3d 982, 995-96 (5th Cir. 2014); *C.C. v. Hurst-Euless-Bedford Indep. Sch. Dist*., 641 F. App'x 423, 426 (5th Cir. 2016). Moreover, B.P. has not identified separate elements for a "failure to keep safe" claim, and the Court is unable to locate any authority supporting this claim using different elements.

12

Because the parties agree to the legal requirements for this claim, and because B.P. has not provided any authority supporting a separate "failure to keep safe" claim, the Court applies the standards used for a hostile environment claim.

> To state a claim for hostile educational environment, B.P. must allege:
>
> (1) [B.P.] was an individual with a disability, (2) [B.P.] was harassed based on . . .] disability, (3) the harassment was sufficiently severe or pervasive that it altered the condition of [B.P.'s] education and created an abusive educational environment, (4) defendant knew about the harassment, and (5) defendant was deliberately indifferent to the harassment.

*Lance*, 743 F.3d at 996 (cleaned up) (quoting *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 454 (6th Cir. 2008)). "A hostile-environment claim requires that the plaintiff allege facts that could plausibly show continuous, nonepisodic abuse." *Duncanville Indep. Sch. Dist.*, No. 3:24-cv-00606-N, 2025 WL 50609, at *6 (citing *Thymes v. AT&T Mobility Servs., LLC*, No. 6:19-cv-00090, 2019 WL 1768311, at *8 (W.D. La. 2019), *rec. adopted*, 2019 WL 1757864 (W.D. La. 2019)).

Courts look to the following factors when evaluating whether the purported harassment was severe or pervasive enough to support a hostile educational environment claim:

> (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct was physically threatening or humiliating, or merely an offensive utterance; (4) whether the conduct interferes with educational performance; and (5) whether the complained-of conduct undermines the plaintiff's educational competence.

*Doe v. Tex. A&M Univ.*, 634 F. Supp. 3d 365, 385 (S.D. Tex. 2022). "The alleged harassment must be so severe and pervasive that it destroys the student's opportunity to succeed in the school, and it must be more than rude or offensive comments, teasing, or isolated incidents." *Id.* (citing *Bryant v. Dayton Indep. Sch. Dist.*, No. H-21-1547, 2021 WL 3555947, at *8 (S.D. Tex. 2021)).

Though BISD concedes that B.P. has a disability, B.P has not alleged facts supporting any other elements required to state a claim for hostile educational environment. *See* ECF No. 20 at

13

15. B.P. does not allege BISD's mistreatment or harassment to disability. B.P. alleges that the swing was not installed correctly but not that this failure to install the swing and supervise its operation was due to B.P.'s disability. *See* ECF No. 21 at 19. Here, the gravamen of B.P.'s complaint is not persistent harassment by school staff but a lack of proper supervision. The single incident at issue does not establish severe or pervasive harassment that could make out a hostile educational environment claim. There was only one incident, and though it resulted in severe injuries to B.P., it was not persistent. B.P.'s environment was neither humiliating nor threatening in the manner contemplated by a hostile environment claim. Thus, although the incident undermined B.P.'s educational competence because of her absence from school, the remaining factors indicate that the school staff's conduct did not pervasively or severely harass B.P. due to a disability.

Additionally, B.P. would also have to establish that the school district was deliberately indifferent to any purported harassment. B.P.'s section 1983 claims, failure to accommodate claims, and hostile environment claim arise from the same isolated incident. Because the FAC does not allege misconduct due to B.P.'s disability, and in the absence of facts showing severe and pervasive harassment, the Court grants BISD's Motion to Dismiss B.P.'s or hostile educational environment claim under Section 504**.**

        D.        **B.P. does not state failure to accommodate under the ADA or Section 504.**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2024). Section 504 provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in,

14

or be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a) (2024).

The Court applies the same legal standards to the ADA and Section 504, and the same remedies are available under both acts. *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010). As a result, "[j]urisprudence interpreting either section is applicable to both." *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000). To allege a claim under the ADA or Section 504, the FAC must plead that B.P. (1) was a qualified individual with a disability; and (2) was excluded from participation in or denied the benefits of the services, programs, or activities of a public education, or was otherwise subjected to discrimination; (3) solely because of a disability. *Id.*

The FAC states that B.P. is a student with disabilities, that BISD knew of the disability and was aware that B.P.'s educational plan called for "constant supervision and monitoring during any task," and that it "failed and refused to reasonably accommodate and modify services needed by B.P. based upon [the] disability, in violation of Title II of the ADA." ECF No. 18 at 6-7; 21 at 13. BISD responds that B.P. does not "identify for the court any accommodations or modifications the District refused to provide for B.P." ECF No. 20 at 16. Even if the FAC properly stated these facts, BISD contends that B.P.'s claims still are defective and do not show intentional discrimination under Section 504 and the ADA. See *id*.

As with B.P.'s constitutional claims, the FAC contains few facts to support B.P.'s conclusional legal assertions. B.P. does not provide facts to show how BISD's policies impacted a disability, or that anyone at BISD intentionally failed to follow that plan. Further, the FAC does not allege facts showing that BISD excluded or discriminated against B.P. because of a disability.

Finally, B.P. does not allege that any BISD employee knew that the Board of Trustee's policies would lead to discrimination against B.P. due to a disability. Therefore, the FAC does not

15

plead facts to show that anyone at BISD disregarded an excessive risk to B.P.'s safety. The FAC provides legal conclusions, but none of the allegations satisfy Rule 12(b)(6)'s requirements that B.P. plead facts to state a claim. The facts as presented do not allow the Court to reasonably infer that there was any BISD misconduct or that BISD deprived B.P. of a constitutional or statutory right due to a disability. *See Iqbal*, 556 U.S. at 678.

### E. The Court dismisses all voluntarily withdrawn claims without prejudice.

On May 6, 2024, B.P. filed the Original Complaint asserting claims under § 1983, Section 504, the ADA, and state law claims pursuant to Section 22.0511 of the Texas Education Code and Chapter 121 of the Texas Human Resources Code. *See* ECF No. 1. At the time of its filing, the parties also were involved in an underlying administrative proceeding before the Texas Education Agency, dealing exclusively with claims related to a free appropriate public education ("FAPE"). ECF No. 15 at 1. On October 31, 2024, the parties resolved the administrative proceeding, and B.P. moved to dismiss claims related to FAPE and those arising under the theory of *respondeat superior* alleging that the BISD School Board was responsible for the actions of those individuals who allegedly failed to provide a FAPE to B.P. *Id.* at 2. B.P. subsequently amended the complaint to reflect these changes. *See* ECF No. 18. Further, in response to BISD's Motion to Dismiss, B.P. also withdrew the failure to train and failure to train or supervise claims under the Due Process Clause of the 14th Amendment; claims for professional bad faith or gross misjudgment under Section 504, and her claim under the Texas Education Code. ECF No. 21 at 7.

A plaintiff may dismiss an action without court order by filing a notice of dismissal before the opposing party serves an answer or files a motion for summary judgment. Fed. R. Civ. P. 41(a)(1)(A)(i). This dismissal is without prejudice unless the plaintiff's notice provides otherwise. *Id*. 41(a)(1)(B). If the plaintiff previously dismissed an action based on or including the same

claim, a notice of dismissal operates as an adjudication on the merits. *Id*. The right to voluntarily dismiss an action prior to these responsive filings is "absolute and unconditional" and may not be "extinguished or circumscribed by adversary or court." *Int'l Driver Training Inc. v. J-BJRD Inc.*, 202 F. App'x 714, 715-16 (5th Cir. 2006) (per curiam) (citations omitted). Therefore, a notice of voluntary dismissal under Rule 41 is "self-executing" and requires no further court action. *Id*. (citation omitted).

The Court treats B.P.'s withdrawn claims as a voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1)(A)(i), as no answer or summary judgment motion has been filed. *See Pennie v. Obama*, 255 F. Supp. 3d 648, 657 (N.D. Tex. 2017). B.P. did not state whether the withdrawal of claims was without prejudice, and the parties have not stated that B.P. previously dismissed any other action based on the same claims. Accordingly, the Court views B.P.'s withdrawal as a voluntary dismissal under Rule 41(a)(1)(A)(i), and the Court dismisses those claims without prejudice.

### F. The Court dismisses B.P.'s remaining claims without leave to amend.

The decision to allow amendment of the pleadings is within the sound discretion of the Court. *Norman v. Apache Corp.,* 19 F.3d 1017, 1021 (5th Cir.1994). In determining whether to allow an amendment of the pleadings, the Court considers: undue delay in the proceedings, undue prejudice to the opposing parties, timeliness of the amendment, and futility of the amendment. *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Chitimacha Tribe of La. v. Harry L. Laws Co., Inc.,* 690 F.2d 1157, 1163 (5th Cir. 1982). "At some point, a court must decide that a plaintiff has had fair opportunity to make her case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit." *Jacquez v. Procunier,* 801 F.2d 789, 792–93 (5th Cir. 1986); *Schiller v. Physicians Resource Group Inc.*, 342 F.3d 563 (5th Cir. 2003).

B.P. has had several opportunities to plead facts showing that BISD or its policies violated B.P.'s constitutional or statutory rights. The first was B.P.'s Original Complaint. ECF No. 1. Then, after BISD filed a Motion to Dismiss and Brief outlining the Complaint's deficiencies, B.P. filed a Notice of Partial Dismissal. *See* ECF Nos. 5, 15. The Court then ordered the parties to file amended pleadings. *See* ECF No. 16. B.P. then filed the FAC. ECF No. 18. The Court finds that additional amendment or revisions to the FAC would be an inefficient use of the Court's resources, would cause unnecessary delay, and would be futile. B.P. apparently has pleaded the best case possible under the existing facts.

## IV. CONCLUSION

For these reasons, the Court **GRANTS** BISD's Motion to Dismiss (ECF No. 19) and **DISMISSES** B.P.'s First Amended Complaint (ECF No. 18). However, because B.P. voluntarily dismissed under Federal Rule of Civil Procedure 41(a)(1)(A)(i) claims for failure to train and failure to train or supervise under the Due Process Clause of the 14th Amendment; claims for professional bad faith or gross misjudgment under Section 504 of the Rehabilitation Act, and the claim under the Texas Education Code, the Court **DISMISSES** these claims **without prejudice**.

It is so **ORDERED** on April 23, 2025.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE

18